UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CECELIA FRUSHER on behalf of    :
RICHARD FRUSHER (deceased),     :
          Plaintiff,            :
                                :
     v.                         :     CA 08-271 ML
                                :
MICHAEL J. ASTRUE,              :
COMMISSIONER OF SOCIAL SECURITY, :
          Defendant.            :

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter is before the Court on the request of Plaintiff Cecelia Frusher ("Plaintiff"), on behalf of her husband, Richard Frusher ("Claimant"), now deceased, for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Disability Insurance Benefits ("DIB"), under §§ 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) ("the Act"), and 28 U.S.C. § 1331.  Plaintiff has filed a motion to reverse the decision of the Commissioner without, or, alternatively, with a remand for a rehearing.  See Plaintiff's Motion for Relief under 42 U.S.C. § 405(g) and/or 28 U.S.C. § 1331 (Document ("Doc.") #9) ("Motion to Reverse").  Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner.  See Defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. #12) ("Motion to Affirm").

This matter has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth herein, I find that the Commissioner's decision is supported by substantial evidence in the record.  Accordingly, based on the following analysis, I

recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Reverse be denied.

### Facts and Travel

Claimant was born in 1941.  (Record ("R.") at 20, 45, 159) He died of a heart attack in October of 2005, and his widow, Plaintiff, is the properly substituted party.  (R. at 20, 24, 158, 212)

Claimant filed prior applications for DIB in 1975 and 1978 (the "prior applications").  (R. at 19-20)  The first (the "1975 application") was denied at the initial determination level in a notice dated September 4, 1975 (the "9/4/75 notice"), on technical grounds for lack of insured status.[1]  (R. at 19, 35) The second (the "1978 application") was denied in an initial determination dated July 11, 1978 (the "7/11/78 notice"), on medical grounds.[2] (R. at 20, 35, 52)  There is no indication in the record of further appeal of those determinations.  (R. at 35)

On November 17, 2003, Claimant filed the current application (the "current application") for DIB, alleging disability since December 31, 1974, due to mental illness.  (R. at 20, 35, 159-61) The current application was denied initially and on reconsideration, (R. at 53-54, 78-80, 81, 90-92), and a request for a hearing before an Administrative Law Judge ("ALJ") was timely filed, (R. at 35, 57, 82).  A hearing was held before ALJ V. Paul McGinn on May 10, 2005 (the "5/10/05 hearing").  (Id.) On June 7, 2005, ALJ McGinn issued a partially favorable decision (the "first decision"), holding that Claimant's psychotic disorder met listing 12.03 since April 1, 1975, the date he was

---

[1] This denial was erroneous with respect to the finding that Claimant did not have insured status at that time.  (R. at 19 n.1)

[2] Neither of the prior applications can be located.  (R. at 20 n.2)

first insured for DIB.[3]   (R. at 20, 35-39, 43)   Thereafter, ALJ
McGinn, in a June 2005 letter, (R. at 128-29), denied a post-
hearing request by Claimant's counsel to reopen the prior
applications, (R. at 121, 125-27).   Claimant appealed this denial
to the Appeals Council, which in a September 16, 2005, order
remanded the case to an ALJ to render a decision on Claimant's
disability during the period from December 31, 1974, his alleged
onset date, through March 31, 1975, because the 5/10/05 hearing
tape could not be located.[4]   (R. at 20, 41-42)

A supplemental hearing was held on March 30, 2006 (the
"3/30/06 hearing"), before ALJ Hugh S. Atkins, (R. at 259), at
which Plaintiff appeared and testified, (R. at 259, 263-73).   On
June 7, 2006, ALJ Atkins issued a decision (the "current
decision"), in which he found that Claimant was not disabled
before April 1, 1975, as he lacked disability insured status
prior to that date.   (R. at 24)   ALJ Atkins also declined to
reopen the prior applications.   (Id.)   Plaintiff requested that
the Appeals Council review ALJ Atkins' decision, (R. at 15), but
on May 19, 2008, the Appeals Council denied her request, (R. at
8-11), thereby rendering ALJ Atkins' decision the final decision
of the Commissioner, (R. at 8).   Plaintiff thereafter filed this
action for judicial review.

### Issues

The issues for determination are whether the decision of ALJ
Atkins that Claimant was not disabled prior to April 1, 1975,
and whether ALJ Atkins' refusal to reopen Claimant's prior

---

[3] The first decision did not confer benefits from April 1, 1975,
because in a DIB claim benefits are payable only up to twelve months
prior to the date of the legally effective application.   (R. at 20);
see also 20 C.F.R. § 404.621 (2009).

[4] The Appeals Council affirmed ALJ McGinn's holding that Claimant
was disabled as of April 1, 1975.   (R. at 20, 41)

applications are supported by substantial evidence in the record and are legally correct.

### Jurisdiction

Ordinarily, a denial of a request to reopen a determination or decision is not reviewable in federal court.  See 20 C.F.R. § 404.903 (2009);[5] (R. at 10); see also Califano v. Sanders, 430 U.S. 99, 107-08 (1977); Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 152 (1st Cir. 1989); cf. 42 U.S.C. 405(g) (limiting judicial review to "final decision[s] of the Commissioner of Social Security made after a hearing").  However, an exception to this general rule exists when a claimant presents a colorable constitutional claim.  See Califano v. Sanders, 430 U.S. at 109; Dvareckas v. Sec'y of Health & Human Servs., 804 F.2d 770, 771 (1st Cir. 1986)("Absent a constitutional claim, we lack jurisdiction to review the Secretary's refusal to reopen a prior adjudicated claim.").  "To be colorable ... the alleged violation need not be substantial, but the claim must have some possible validity."  Mehilli v. Gonzales, 433 F.3d 86, 93-94 (1st Cir. 2005)(quoting Torres-Aguilar v. INS, 246 F.3d 1267, 1271 (9th Cir. 2001)(citation omitted)); see also Boothby v. Soc. Sec. Admin., No. 97-1245, 1997 WL 727535, at *1 (1st Cir. Nov. 18, 1997)(unpublished decision)(noting that inquiry regarding whether

---

[5] Section 404.903 provides, in relevant part, that:

Administrative actions that are not initial determinations may be reviewed by [the Social Security Administration ("SSA")], but they are not subject to the administrative review process provided by this subpart, and they are not subject to judicial review.  These actions include, but are not limited to, an action--

....

(l) Denying your request to reopen a determination or a decision ....

20 C.F.R. § 404.903 (2009).

colorable due process claim has been demonstrated "is not an
onerous standard")(citing <u>Evans v. Chater</u>, 110 F.3d 1480, 1483
(9th Cir. 1997)); <u>accord</u> <u>Udd v. Massanari</u>, 245 F.3d 1096, 1099
(9th Cir. 2001)("A challenge that is not wholly insubstantial,
immaterial, or frivolous raises a colorable constitutional
claim.")(internal quotation marks omitted).  Such instances will
be "rare."  <u>Califano v. Sanders</u>, 430 U.S. at 109.  Defendant
concedes that Plaintiff has advanced a colorable constitutional
claim in the instant matter.  <u>See</u> Defendant's Memorandum of Law
in Support of Motion for an Order Affirming the Decision of the
Commissioner ("Defendant's Mem.") at 5 ("Plaintiff advances such
a claim here - arguing that because his mental impairments
prevented him from understanding and pursuing administrative
remedies, the Commissioner's refusal to reopen his prior
applications contravenes due process."); <u>see also</u> <u>Udd v.
Massanari</u>, 245 F.3d at 1099 ("Where a claimant alleges that a
prior determination should be reopened because he suffered from a
mental impairment and was not represented by counsel[6] at the
time of the denial of benefits, he has asserted a colorable
constitutional claim."); <u>Elchediak v. Heckler</u>, 750 F.2d 892 (11th
Cir. 1985)(noting that "plaintiff's contention that his mental
illness precluded him from litigating his claim for disability
benefits because it prevented him from proceeding in a timely
fashion from one administrative level to the next raises a
colorable constitutional claim").

**Standard of Review**

Although the Court of Appeals for the First Circuit has not
addressed the standard of review to be employed in a case such as
this, other circuits have utilized the familiar substantial

---

[6] The Ninth Circuit in <u>Udd v. Massanari</u>, 245 F.3d 1096 (9th Cir.
2001), noted that "lack of representation by counsel is not required
to state a colorable constitutional claim," <u>id.</u> at 1099 n.3.

5

evidence test.  <u>See</u> <u>Stieberger v. Apfel</u>, 134 F.3d 37, 38 (2nd Cir. 1997)(noting, in case involving particularized claim of mental impairment preventing comprehension of SSA notice of administrative remedies, that "review is subject to the traditional substantial evidence test"); <u>see also</u> <u>Evans v. Chater</u>, 110 F.3d at 1484 (utilizing substantial evidence test in affirming decision that claimant was not so mentally impaired that denial of reopening prior applications contravened due process); <u>Schrader v. Heckler</u>, 754 F.2d 142, 144 (4th Cir. 1985) (utilizing substantial evidence test in finding that factual determination that claimant's mental condition was not such as to prevent, on due process grounds, application of res judicata to claim).  This Court follows the Second, Fourth, and Ninth Circuits and finds that use of the substantial evidence test is appropriate.

Under that standard, the Court's role in reviewing the Commissioner's decision is limited.  <u>Brown v. Apfel</u>, 71 F.Supp.2d 28, 30 (D.R.I. 1999).  Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[7] are conclusive.  <u>Id.</u> (citing 42 U.S.C. § 405(g)).  The determination of substantiality is based upon an evaluation of the record as a whole.  <u>Id.</u> (citing <u>Irlanda Ortiz v. Sec'y of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")

---

[7] The Supreme Court has defined substantial evidence as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); <u>see also</u> <u>Brown v. Apfel</u>, 71 F.Supp.2d 28, 30 (D.R.I. 1999)(quoting <u>Richardson v. Perales</u>, 402 U.S. at 401, 91 S.Ct. at 1427).

(second alteration in original)).  The Court does not reinterpret
the evidence or otherwise substitute its own judgment for that of
the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health
& Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "Indeed, the
resolution of conflicts in the evidence is for the Commissioner,
not the courts."  Id. at 31 (citing Rodriguez v. Sec'y of Health
& Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing
Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426
(1971))).

### Regulatory Framework

An initial determination is binding unless a claimant
requests reconsideration within the stated time period or the
Social Security Administration ("SSA") revises the initial
determination.  See 20 C.F.R. § 404.905 (2009); see also 20
C.F.R. § 404.987 (2009) ("Generally, if you are dissatisfied with
a determination or decision made in the administrative review
process, but do not request further review within the stated time
period, you lose your right to further review and that
determination or decision becomes final.").  A claimant (or other
party to the reconsideration) must file a written request for
reconsideration within sixty days after receipt of notice of the
initial determination.  See 20 C.F.R. § 404.909(a) (2009).
However,

> [i]f you want a reconsideration of the initial
> determination but do not request one in time, you may ask
> us for more time to request a reconsideration.  Your
> request for an extension of time must be in writing and
> must give the reasons why the request for reconsideration
> was not filed within the stated time period.  If you show
> us that you had good cause for missing the deadline, we
> will extend the time period.  To determine whether good
> cause exists, we use the standards explained in §
> 404.911.

20 C.F.R. § 404.909(b).  Section 404.911 provides in relevant

7

part that:

    (a) In determining whether you have shown that you had good cause for missing a deadline to request review we consider--
  (1) What circumstances kept you from making the request on time;
  (2) Whether our action misled you;
  (3) Whether you did not understand the requirements of the Act resulting from amendments to the Act, other legislation, or court decisions; and
  (4) **Whether you had any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which prevented you from filing a timely request or from understanding or knowing about the need to file a timely request for review.**

    ....

20 C.F.R. § 404.911(a) (2009) (bold added).

A determination, revised determination, decision, or revised decision may be reopened--

  (a) Within 12 months of the date of the notice of the initial determination, for any reason;
  (b) Within four years of the date of the notice of the initial determination if we find good cause, as defined in § 404.989,[8] to reopen the case; or
  (c) At any time if--
  (1) It was obtained by fraud or similar fault ...;

---

[8] According to § 404.989:

  (a) We will find that there is good cause to reopen a determination if--
  (1) New and material evidence is furnished;
  (2) A clerical error in the computation or recomputation of benefits was made; or
  (3) The evidence that was considered in making the determination or decision clearly shows on its face that an error was made.
  (b) We will not find good cause to reopen your case if the only reason for reopening is a change of legal interpretation or administrative ruling upon which the determination or decision was made.

20 C.F.R. § 404.989 (2009).

8

....

   (7) It finds that the claimant did not have insured status, but earnings were later credited to his or her earnings record to correct errors apparent on the face of the earnings record ... which would have given him or her insured status at the time of the determination or decision if the earnings had been credited to his or her earnings record at that time, and the evidence of these earnings was in our possession ... **at the time of the determination or decision**;

....

20 C.F.R. § 404.988 (2009) (bold added).

### ALJ's Decision

   ALJ Atkins made the following findings: that Plaintiff was the properly substituted party upon the death of Claimant; that the Appeals Council affirmed ALJ McGinn's decision as it pertained to Claimant's disability beginning on April 1, 1975, and remanded only for determination of Claimant's disability during the period from his alleged onset date of December 31, 1974, through March 31, 1975; that the record demonstrated that Claimant first met the disability insured requirements of the Act on April 1, 1975, and continued to meet them through June 30, 1975, and again met the requirements as of October 1, 1975, and continued to meet them through June 30, 1976; that Claimant was not disabled at any time prior to April 1, 1975, the date he was first insured for purposes of DIB;[9] that the initial determinations of the prior applications were not to be reopened

---

   [9] Plaintiff does not challenge this finding.  In fact, at the 3/30/06 hearing, Plaintiff's counsel agreed that the issue of Claimant's disability prior to April 1, 1975, was "legally irrelevant and moot, because he wasn't even first insured until after that point."  (R. at 261)  Accordingly, the Court finds that ALJ Atkins' finding that Claimant was not disabled at any time prior to April 1, 1975, based on the current application is supported by substantial evidence in the record and is legally correct.

or revised; that Claimant, through Plaintiff, his widow, had not
established "good cause" for missing the deadline to request
reconsideration of the initial determinations dated September 4,
1975, and July 11, 1978, pertaining to the prior applications;
and that Claimant was entitled to a period of disability and DIB
commencing on April 1, 1975, but not prior thereto because
Claimant lacked disability insured status prior to that date.
(R. at 24)

**Errors Claimed**

Plaintiff argues that: (1) ALJ Atkins' finding that Claimant
did not have "good cause" under Social Security Ruling ("SSR")
91-5p for missing the deadline for requesting reconsideration of
the initial denials of his prior applications is not supported by
substantial evidence; (2) ALJ Atkins' refusal to reopen
Claimant's prior applications despite his mental illness violated
his right to procedural due process; and (3) ALJ Atkins' refusal
to reopen Claimant's prior applications based on defective
notice(s) violated his right to procedural due process and SSR
95-1p.

**Discussion**

**I.   SSR 91-5p - Good Cause**

Citing SSR 91-5p, Plaintiff argues that ALJ Atkins' finding
that Claimant did not have "good cause" for not timely requesting
reconsideration of the 9/4/75 and 7/11/78 initial determinations
is unsupported by substantial evidence in the record.  See
Memorandum in Support of Plaintiff's Motion for Relief under 42
U.S.C. § 405(g) and/or 28 U.S.C. § 1331 ("Plaintiff's Mem.") at
9, 11-13.  Plaintiff contends that Claimant's "mental illness
clearly meets the 'good cause' criteria."  Id. at 10; see also
id. at 11 ("[Claimant] maintains that a Listing level psychotic
impairment constitutes good cause for his failure to appeal ...
[and] that his mental impairment prevented him from understanding

10

and pursuing the procedures for requesting reconsideration of the September 1975 and/or July 1978 initial determinations.").

According to SSR 91-5p:

> When a claimant presents evidence that mental incapacity prevented him or her from timely requesting review of an adverse determination ..., and the claimant had no one legally responsible for prosecuting the claim (e.g., a parent of a claimant who is a minor, legal guardian, attorney, or other legal representative) at the time of the prior administrative action, SSA will determine whether or not good cause exists for extending the time to request review.  If the claimant satisfies the substantive criteria, the time limits in the reopening regulations do not apply; so that, regardless of how much time has passed since the prior administrative action, the claimant can establish good cause for extending the deadline to request review of that action.
>
> **The claimant will have established mental incapacity for the purpose of establishing good cause when the evidence establishes that he or she lacked the mental capacity to understand the procedures for requesting review.**
>
> In determining whether a claimant lacked the mental capacity to understand the procedures for requesting review, **the adjudicator must consider the following factors as they existed at the time of the prior administrative action:**
> —inability to read or write;
> —lack of facility with the English language;
> —limited education;
> —**any mental or physical condition which limits the claimant's ability to do things for him/herself.**
>
> If the claimant is unrepresented and has one of the factors listed above, the adjudicator will assist the claimant in obtaining any relevant evidence.  The decision as to what constitutes mental incapacity must be based on all the pertinent facts in a particular case. **The adjudicator will resolve any reasonable doubt in favor of the claimant.**

SSR 91-5p, 1991 WL 208067, at *2 (S.S.A.) (bold added).  "If the claimant establishes good cause for missing the deadline to request review, [SSA] process[es] the request for review in

11

accordance with established procedures and the prior administrative action is not final or binding for purposes of applying the rules on either res judicata or administrative finality."  Id. at *1.

ALJ Atkins found that Plaintiff's counsel's

> broad argument that the mere fact that ALJ McGinn[10] and the U.S. Army[11] found the claimant to be disabled due to a severe mental impairment is insufficient to establish "good cause" for the claimant missing the deadline for filing a request for reconsideration relative to the initial determinations on his prior applications for [DIB] filed in 1975 and March 1978.[12]  [Plaintiff] admitted at the hearing that during the 1970s, [claimant] was home alone, without a caretaker or guardian, while she was away working.  There is no evidence in the record indicating that the claimant had been adjudicated by any court or similar body as being "mentally incompetent" at that time.  In addition, there is no indication in the medical evidence of record which indicates the claimant had either a psychiatric hospitalization or any other exacerbation in his mental impairment at the times he would have received the initial determination denial notices on his prior applications for [DIB].  The claimant apparently had no problem filing not only one prior application, but, also, another prior application

---

[10] See (R. at 35-39).

[11] In a letter dated March 28, 2002, the Department of Veterans Affairs notified Claimant that he had been found to be 100% disabled due to bipolar disorder with post traumatic stress disorder and was entitled to service connected compensation effective September 17, 1998.  (R. at 59-62); see also (R. at 63-71).

[12] At this point in his opinion ALJ Atkins included a footnote which stated:

> The mere fact that the cla[i]mant was found to have a Listings level mental impairment (psychosis) does not necessarily mean that he was "mentally incompetent" and "lacked the mental capacity to understand the procedures for requesting review" relative to his failure to request a reconsideration after the initial determinations on the prior applications filed in "1975" and "March 1978."

(R. at 23 n.7)(internal citation omitted).

for [DIB] in the 1970's despite his mental impairment.[13] In fact, the claimant worked, though not at the substantial gainful activity level, during the alleged period of disability despite his mental illness. Indeed, the claimant did not transfer his power of attorney to his wife until 1996, an act which would require that the claimant be mentally competent at that point in time. Hence, this [ALJ] holds that the claimant (through his widow) has not established good cause for missing the deadline to request a reconsideration determination on either the initial determination dated September 4, 1975[,] or the initial determination dated July 11, 1978[,] relative to the claimant's prior applications for [DIB] filed in 1975 and March 1978.

(R. at 23)(footnotes and internal citations omitted).

Plaintiff challenges almost every point made by ALJ Atkins in rejecting her SSR 91-5p argument. First, as noted above, ALJ Atkins rejected Plaintiff's broad argument that the fact that both ALJ McGinn and the U.S. Army found Claimant to be disabled due to a severe mental impairment was sufficient to establish "good cause" for missing the deadline for filing a request for reconsideration of the initial determinations regarding his prior applications. (R. at 23) The Court finds that the ALJ was correct in doing so. ALJ McGinn's decision that Claimant met Listing 12.03 as of April 1, 1975, does not automatically mean that Claimant "lacked the mental capacity to understand the procedures for requesting review." SSR 91-5p, 1991 WL 208067, at *1, 2; see also Devereaux v. Chater, No. 95-1196, 1996 WL 98956, at *1, 4 (10th Cir. Mar. 7, 1996)(unpublished decision) (affirming ALJ's determination, which noted distinction between disability from employment and incompetency to pursue a claim for benefits, that plaintiff had mental competency to administer

---

[13] Plaintiff testified at the 3/30/06 hearing that she was aware that Claimant had filed the 1975 application, but could not remember whether she or "the company helped him apply for it." (R. at 270) She further testified that she had no knowledge regarding the 1978 application. (R. at 270-71)

13

claim); <u>Torres v. Sec'y of Health, Educ. & Welfare</u>, 475 F.2d 466, 468 (1st Cir. 1973)("[T]he general finding of disability[,] made on evidence of both asthma and nerves, tells us merely that he was occupationally disabled within the meaning of the Act; one may be so disabled and yet retain the awareness and mental capacity to understand and pursue one's right."). Similarly, the fact that the United States Army found Claimant to be disabled based on his mental impairment does not require the SSA to do the same. <u>See</u> <u>Cushman v. Soc. Sec. Admin.</u>, 175 Fed. Appx. 861, 862 (9th Cir. 2006)("[A]lthough a VA disability rating does not necessarily compel the [SSA] to reach the same result, such rating must be given great weight."); (R. at 92)("A finding by a private organization or government agency that a person is disabled does not necessarily mean that the person meets the disability requirements of the [Act]."). ALJ Atkins was clearly aware of Claimant's 100% disability rating by the VA, having questioned Plaintiff regarding same during the 3/30/06 hearing, (R. at 265-67), and acknowledged Plaintiff's argument regarding that disability rating in his decision, (R. at 21).

ALJ Atkins also noted that Plaintiff "admitted at the hearing that during the 1970s her husband was home alone, without a caretaker or guardian, while she was away working." (R. at 23); <u>see also</u> (R. at 265, 268, 271). Plaintiff also testified that during this period Claimant sometimes drove himself to doctor's appointments, (R. at 265), and that at one point Claimant was in control of the mail and bills, (R. at 271). SSR 91-5p directs the ALJ to consider factors relating to "any mental ... condition which limits the claimant's ability to do things for him/herself." SSR 91-5p, 1991 WL 208067, at *2. While Plaintiff testified that "during the relevant time frame, [Claimant's] judgment about money and benefits was clouded by severe mental illness," Plaintiff's Mem. at 12, "[i]t is the

14

responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence," <u>Irlanda Ortiz v. Sec'y of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991).

Plaintiff takes issue with ALJ Atkins' statements that "[t]here is no evidence in the record indicating that the claimant had been adjudicated by any court or similar body as being 'mentally incompetent' at that time," (R. at 23), and that "there is no indication in the medical evidence of record which indicates the claimant had either a psychiatric hospitalization or any other exacerbation in his mental impairment at the times he would have received the initial determination notices on his prior applications for [DIB]," (<u>id.</u>).  Plaintiff complains that "ALJ Atkins apparently improperly required [Claimant] to have been adjudicated incompetent or to have transferred all decision-making authority to another person to prove that he could not understand the relevant initial determinations and the importance of appealing," Plaintiff's Mem. at 12-13,[14] and that "ALJ Atkins apparently required [Claimant] to prove that he was psychiatrically hospitalized at the time he would have received the initial determinations to show that he could not understand them," <u>id.</u> at 12.  Plaintiff correctly states that there is no legal requirement that either of the above must have occurred. However, ALJ Atkins required no such thing.  He simply considered Plaintiff's mental state and competence among other factors in reaching his determination that Plaintiff did not lack the mental capacity to understand the procedures for review.  <u>See</u> SSR 91-5p,

---

[14] The ALJ also observed–and Plaintiff does not dispute–that Claimant did not transfer power of attorney to her until 1996, "an act which would require that the claimant be mentally competent at that time."  (R. at 23); <u>see also</u> (R. at 268).  Additionally, the record indicates that Claimant was found to be competent for VA purposes in 2002.  (R. at 68)

1991 WL 208067, at *1, 2; see also Evans v. Chater, 110 F.3d at
1484 (affirming ALJ's finding that claimant had not shown good
cause under SSR 91-5p to reopen either of his two prior
applications in part because of claimant "never having been
diagnosed as incompetent"); Devereaux v. Chater, No. 95-1196,
1996 WL 98956, at *3 (noting that "[t]here is no contemporaneous
medical evidence demonstrating medical incompetence in 1975");
Matos v. Sec'y of Health, Educ. & Welfare, 581 F.2d 282, 287 (1st
Cir. 1978)(noting that nothing in psychiatric report indicated
that claimant was mentally unfit to pursue administrative
remedies). But see Udd v. Massanari, 245 F.3d at 1100, 1101
(noting that claimant experienced crisis requiring
hospitalization one week before termination of benefits).[15]

Plaintiff additionally challenges the ALJ's reliance on
Plaintiff's ability to file "not only one prior application, but,
also, another prior application for [DIB] in the 1970's despite
his mental impairment," (R. at 23), stating that the "issue is
not whether [Claimant] knew how to apply for benefits, but rather
whether he understood how to appeal, the importance of appealing,

---

[15] The record reflects that Claimant was hospitalized six times at
Butler Hospital ("Butler").  (R. at 213-40)  His second
hospitalization, from February 11, 1975, to March 12, 1975, (R. at
216-23), preceded his receipt of the 9/4/75 notice by almost six
months.  At the time of his discharge on March 12, 1975, a notation by
Eliot Barron, M.D., indicated that Claimant "ha[d] been able to
achieve a reasonably satisfactory remission."  (R. at 216); see also
(R. at 219).  There is no evidence in the record that Claimant was
hospitalized again until June 28, 1976.  (R. at 224)  He returned to
Butler in December of 1976.  (R. at 227-31)
        Plaintiff was hospitalized at Butler again in May and June of
1978, (R. at 232-36), apparently because he was not taking his
medication regularly, (R. at 234).  On discharge June 16, 1978, it was
noted that he had entered a remission but, after being taken off
Haldol, became "mildly hypomanic."  (Id.)  After being put back on a
lower dose of Haldol, he was discharged to convalesce briefly at his
parents' home.  (Id.)  He received the 7/11/78 notice approximately
one month later.  There is no indication in the record of another
hospitalization until December of 1979.  (R. at 237-40)

of seeking further administrative review of an initial denial of
those benefits," Plaintiff's Mem. at 12.  However, courts have
considered such actions in determining whether a claimant lacked
the mental capacity to understand the procedures for requesting
review.  See Matos v. Sec'y of Health, Educ. & Welfare, 581 F.2d
at 287 ("[I]n 1968 her mental condition did not preclude her from
filing her second claim."); see also Shrader v. Heckler, 754 F.2d
142, 144 (4th Cir. 1985)(noting record indicated that following
denial of his third claim, plaintiff "properly and timely applied
for administrative reconsideration of the denial" and concluding
that this, among other factors, "[was] substantial evidence to
support the Secretary's determination that [plaintiff] had the
mental capacity to understand the hearing and appellate process
incident to consideration of his claim").  It was reasonable for
ALJ Atkins to infer from Claimant's ability to file two
additional applications for DIB that he should have been able to
understand the procedures for seeking review of the initial
denials of the prior applications.  See Irlanda Ortiz v. Sec'y of
Health & Human Servs., 955 F.2d at 769 ("It is the responsibility
of the [Commissioner] to ... draw inferences from the record
evidence.").  The ALJ also observed that Claimant worked
subsequent to his alleged onset date, albeit not at the level of
substantial gainful activity, despite his mental illness.  (R. at
23)

     Plaintiff's final argument pertaining to SSR 91-5p is that
ALJ Atkins, contrary to the dictates of the ruling, "did not
'resolve any reasonable doubt in favor of the claimant.'"
Plaintiff's Mem. at 12 (quoting SSR 91-5p, 1991 WL 208067, at
*2).  However, Defendant notes that Plaintiff points to no
"specific failure," Defendant's Memorandum of Law in Support of
Motion for an Order Affirming the Decision of the Commissioner
("Defendant's Mem.") at 11, and there is no indication in ALJ

17

Atkins' opinion that he did not give Claimant the benefit of any
reasonable doubt.  This appears to be a situation in which
Plaintiff simply disagrees with the result on remand, see
Dvareckas v. Sec'y of Health & Human Servs., 804 F.2d at 772
(noting that "claimant's argument is simply that the first
decision was wrong and should now be corrected even though the
time for further review has long since passed"), and is, in
effect, asking this Court to substitute its judgment for that of
the Commissioner, see Colon v. Sec'y of Health & Human Servs.,
877 F.2d at 152-53 ("With respect to a decision whether to reopen
a prior final decision ... the district court simply has no
authority to reweigh the evidence and substitute its judgment for
that of the [Commissioner] in denying a request to reopen."); see
also Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d
1, 3 (1st Cir. 1987)("We must affirm the [Commissioner's]
resolution, even if the record arguably could justify a different
conclusion, so long as it is supported by substantial
evidence."); Rodriguez v. Sec'y of Health & Human Servs., 647
F.2d 218, 222 (1st Cir. 1981)("We must uphold the
[Commissioner's] findings in this case if a reasonable mind,
reviewing the evidence in the record as a whole, could accept it
as adequate to support his conclusion.").

The Court finds that Plaintiff has not established that
Claimant "lacked the mental capacity to understand the procedures
for requesting review."  SSR 91-5p, 1991 WL 208067, at *1, 2,
and, therefore, has not shown "good cause," id., for missing the
deadline to request reconsideration of the initial denials of his
prior applications.  The Court further finds that ALJ Atkins'
decision that the prior applications should not be reopened is
supported by substantial evidence in the record and is legally
correct.  Accordingly, I do not recommend remand on Plaintiff's
first claim of error.

18

## II.   Procedural Due Process

Plaintiff asserts that Claimant had a property interest in his applications for DIB, that he had a right to procedural due process in his proceedings for DIB, and that he lacked the mental capacity to understand the significance of the September 1975 and July 1978 initial denials or to pursue his administrative remedies with respect thereto.  Plaintiff's Mem. at 14.  The Court has already addressed the last contention in connection with Plaintiff's SSR 91-5p argument.

"It is axiomatic that due process requires that a claimant receive meaningful notice and an opportunity to be heard before his claim for disability benefits may be denied."  Udd v. Massanari, 245 F.3d at 1099 (citing Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893 (1976))("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"); see also Goldberg v. Kelly, 397 U.S. 254, 267, 90 S.Ct. 1011 (1970)("The fundamental requisite of due process of law is the opportunity to be heard.").  The Supreme Court has addressed the issue of due process requirements in the context of Social Security disability benefits:

> **The essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.**  All that is necessary is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard, to insure that they are given a meaningful opportunity to present their case.

Mathews v. Eldridge, 424 U.S. at 348-49 (bold added)(internal citations and quotation marks omitted); see also Richardson v. Perales, 402 U.S. 389, 402, 91 S.Ct. 1420 (1971)(noting that extent to which procedural due process must be afforded to recipient is influenced by the extent to which he may be "condemned to suffer grievous loss")(quoting Goldberg v. Kelly,

19

397 U.S. at 263; cf. Stieberger v. Apfel, 134 F.3d at 39 (noting
that "several circuits have ruled that notice of administrative
appellate time limits is constitutionally defective when received
by a person too mentally ill to understand the notice" and citing
cases); Boothby v. Soc. Sec. Admin. Comm'r, 1997 WL 727535, at *1
(noting that argument that, because claimant's mental impairment
prevented him from understanding and pursuing his administrative
remedies and he lacked legal or other representation at the time,
the refusal to reopen first application contravened due process
"when factually supported, has gained a favorable judicial
reception").

> Deciding whether procedural due process has been denied
> in a given case involves two inquiries.  First, the court
> must determine whether a life, liberty, or property
> interest is at stake.   If the answer to the first
> question is "yes," the court must go on to decide what
> process is due.

Butland v. Bowen, 673 F.Supp. 638, 640 (D. Mass. 1987).

Here, Plaintiff argues that Claimant had a property interest
in his application for DIB.  Plaintiff's Mem. at 14.  "To have a
property interest in a benefit, a person clearly must have more
than an abstract need or desire for it.  He must have more than a
unilateral expectation of it.  He must, instead, have a
legitimate claim of entitlement to it."  Bd. of Regents of State
Colls. v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701 (1972).  The
United States Supreme Court has yet to rule on the extent to
which applicants for, as distinguished from recipients of,
government benefits have property rights in their expectations.
Butland v. Bowen, 673 F.Supp. at 640-41; accord Cushman v.
Shinseki, No. 2008-7129, 2009 WL 2448505, at *6 (Fed. Cir. Aug.
12, 2009)("The Supreme Court has not ... resolved the specific
question of whether applicants for benefits, who have not yet
been adjudicated as entitled to them, possess a property interest

in those benefits.").  Other courts, however, have accorded due
process rights to applicants for benefits.  Butland v. Bowen, 673
F.Supp. at 641 (listing cases); see also Gonzalez v. Sullivan,
914 F.2d 1197, 1203 (9th Cir. 1990)("An applicant for social
security benefits has a property interest in those benefits.");
Daniels v. Woodbury County, Iowa, 742 F.2d 1128, 1132 (8th Cir.
1984)(rejecting distinction between eligibility for and
termination of benefits); Wright v. Califano, 587 F.2d 345, 354
(7th Cir. 1978)(declining to stress distinction between
applicants for and recipients of Social Security benefits and
stating that "denials do not necessarily deserve less due process
than terminations"); Dealy v. Heckler, 616 F.Supp. 880, 886 (W.D.
Mo. 1984)(finding that plaintiff "has, as a Social Security
applicant, a sufficient claim of entitlement to Social Security
benefits to trigger a protected property interest"); c.f. Cushman
v. Shinseki, 2009 WL 2448505, at *8 (finding that applicant for
veteran's disability benefits had property interest protected by
Due Process Clause); Raper v. Lucey, 488 F.2d 748, 752 (1st Cir.
1973)(finding that procedural due process applies to applicants
for motor vehicle operator's license).

"A procedural due process violation ... is not complete
'when the deprivation occurs; it is not complete unless and until
the State fails to provide due process.'"  Kildare v. Saenz, 325
F.3d 1078, 1085 (9th Cir. 2003)(quoting Zinermon v. Burch, 494
U.S. 113, 125-26, 110 S.Ct. 975 (1990)); cf. Holbrook v. Pitt,
643 F.2d 1261, 1280 (7th Cir. 1981)("Due process ... is a
flexible concept that requires such procedural protections as the
particular situation demands.").  Assuming without deciding that
Claimant (as an applicant for DIB) had a constitutionally

protected property interest in such potential benefits,[16] <u>see</u>
<u>Gipson v. Harris</u>, 633 F.2d 120, 122 (8th Cir. 1980), the Court
must next determine what process is due, <u>see</u> <u>Butland v. Bowen</u>,
673 F.Supp. at 640; <u>see also</u> <u>Gonzalez v. Sullivan</u>, 914 F.2d at
1203 ("Because appellant has a protected interest, this court
must determine what process is due.")(citing <u>Mathews v. Eldridge</u>,
424 U.S. at 335).  This inquiry generally requires consideration
of three factors:

> First, the private interest that will be affected by the
> official action; second, the risk of an erroneous
> deprivation of such interest through the procedures used,
> and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the
> Government's interest, including the function involved
> and the fiscal and administrative burdens that the
> additional or substitute procedural requirement would
> entail.

<u>Mathews v. Eldridge</u>, 424 U.S. at 335.

First, with respect to the private interest, clearly
Plaintiff (on behalf of Claimant) has an interest in receiving
the benefits to which she alleges Claimant is entitled based on
the prior applications.  <u>See</u> <u>Howard v. Apfel</u>, 17 F.Supp.2d 955,
970 (W.D. Mo. 1998)(noting that "[t]he private interest is both
significant and obvious" because plaintiff had paid into the
Social Security program for years and her financial condition was
such that she needed the disability benefits); <u>Butland v. Bowen</u>,
673 F.Supp. at 641 ("[The] plaintiff's private interest is
potentially great.  She asserts that she has paid the proper
amounts into the social security system; that she is permanently

---

[16] The Court bases this assumption on the Ninth Circuit's holding
in <u>Gonzalez v. Sullivan</u>, 914 F.2d 1197, 1203 (9th Cir. 1990), the
District of Massachusetts' holding in <u>Butland v. Bowen</u>, 673 F.Supp.
638, 641 (D. Mass. 1987), and the fact that the First Circuit in <u>Raper
v. Lucey</u>, 488 F.2d 748 (1st Cir. 1973), concluded that procedural due
process applied to procedures governing applications for motor vehicle
operator's licenses, <u>see</u> <u>id.</u> at 752.

disabled due to multiple sclerosis; and that she now needs her
social security disability insurance proceeds in order to cover
medical expenses."); Dealy v. Heckler, 616 F.Supp. at 886 ("The
private interest involved is both significant and obvious.  The
plaintiff, who has paid into the Social Security program for many
years, may be entitled to receive disability benefits.  Moreover,
plaintiff's current financial situation indicates a need for
additional financial support."); cf. Holbrook v. Pitt, 643 F.2d
at 1280 (noting that "the Supreme Court has recognized that 'the
possible length of wrongful deprivation of ... benefits is an
important factor in assessing the impact of official action on
the private interests.'")(quoting Mathews v. Eldridge, 424 U.S.
at 341)(alteration in original).  However, the significance of
this factor is diminished by the fact that the Court has already
found that good cause has not been shown for reopening the 1975
application or the 1978 application.  See Discussion section I.
supra at 18; see also Passopulos v. Sullivan, 976 F.2d 642, 648
(11th Cir. 1992)("The ALJ was not required to go back and
consider [plaintiff's] claims of physical impairment individually
because, as previously noted, the ALJ had determined that
[plaintiff] had not shown good cause for reopening the 1982 final
decision.").

Second, as to the risk of erroneous deprivations and
probable value of additional or substitute procedural safeguards,
the risk of erroneous deprivation is high.  Howard v. Apfel, 17
F.Supp.2d at 970; see also id. ("[T]here is not just a mere
possibility that plaintiff would be awarded benefits.  She was
awarded disability benefits."); cf. Ford v. Shalala, 87 F.Supp.2d
163, 181 (E.D.N.Y. 1999)("The magnitude of the risk of error ...
is revealed by consideration of the effect they inevitably have
on the proper functioning of those processes designed by the
agency for the very purpose of correcting error.  Absent basic

information with respect to the factual and legal premises for
agency action, claimants cannot evaluate whether an appeal is
warranted much less make that determination in the short time
given them to preserve their appeal rights.").  Although "no
significant financial[17] or administrative burden is associated
with the requirement that the government provide plaintiff with
correct information," Butland v. Bowen, 673 F.Supp. at 641
(citing Dealy v. Heckler, 616 F.Supp. at 880, 886); see also id.
at 642 (noting that plaintiff's second denial should not have
been accorded finality because the plaintiff was not informed
about the res judicata consequences of abandoning the action),[18]
the SSA has already recognized the need to avoid providing
misleading information, see SSR 95-1p, 1995 WL 259487, at *2
(S.S.A.).  However, as will be discussed in the next section, see
Discussion section III. infra at 29-30, ALJ Atkins determined
that SSR 95-1p did not apply in the instant matter, and the Court
finds no reason to reverse that determination.

---

[17] The Court notes, as did ALJ Atkins, (R. at 21 n.5), that "the
potential 'costs' of this case to the [G]overnment is in no way a
consideration in deciding this case," (id.); cf. Ford v. Shalala, 87
F.Supp.2d 163, 182 (E.D.N.Y. 1999)("Governmental interest in
preserving the public fisc and conserving administrative resources is
'not overriding' in the welfare context.").

[18] The Court notes that res judicata is not at issue here because
ALJ McGinn found that:

> [I]n view of the fact that the prior files cannot be located
> a decision cannot be made as to whether the previous adverse
> determinations involved the same facts and issues; the initial
> determination dated September 4, 1975, is erroneous on its
> face as it indicated that the claimant did not have disability
> insured status; and in view of the fact that the claimant's
> impairment(s) is mental and those determinations were made
> prior to the publication of the revised mental impairment
> Regulations on August 28, 1985, issued in response to the
> Disability Benefits Reform Act of 1984, res judicata is
> precluded.

(R. at 38)

Third, regarding the Government's interest, clearly the
Government has an interest in administrative finality of
determinations pertaining to claims for benefits.  See Califano
v. Sanders, 430 U.S. at 108 (noting congressional policy choice
in § 205(g), 42 U.S.C. § 405(g), which was "obviously designed to
forestall repetitive or belated litigation of stale eligibility
claims"); see also Young v. Bowen, 858 F.2d at 955 ("In the
context of social security law, both res judicata and
administrative finality accomplish one similar task—they prevent
reexamination of the merits of an administrative decision.");
Matos v. Sec'y of Health, Educ. & Welfare, 581 F.2d at 286
(noting, in case where claimant argued that time limits for
reopening claim for DI should not apply to mentally disabled
person, that allowing judicial review of res judicata
determinations "would have the effect of disturbing the finality
of decisions ... from which the claimant originally could have
made a timely appeal if he had pursued all his remedies").  "A
claim of constitutionally defective notice, even in the context
of a claim for disability benefits based on mental illness,
cannot involve federal court jurisdiction merely upon a
generalized allegation, long after the fact, that the claimant
was too confused to understand available administrative
remedies."  Stieberger v. Apfel, 134 F.3d at 41.

Moreover, this Court finds the Fourth Circuit's holding in
Long v. Chater, No. 94-2343, 1995 WL 234291, at *1 (4th Cir.
1995)(unpublished decision), to be persuasive.  The Fourth
Circuit found that:

> [T]he district court correctly dismissed [the
> plaintiff's] complaint for lack of subject matter
> jurisdiction.  The Secretary's denial of her request to
> reopen a prior denied claim is plainly not subject to
> judicial review.  To the extent [the plaintiff] argues
> that the Secretary's denial violated her due process
> rights, we find this contention without merit because the

> Secretary satisfied the requirements of the Due Process
> Clause by conducting a supplemental hearing and making
> findings concentrating [the plaintiff's] mental capacity
> in 1985.

Long v. Chater, 1995 WL 234291, at *1; see also Young v. Bowen,
858 F.2d 951, 955 (4th Cir. 1988)(noting that once plaintiff had
presented prima facie proof that mental illness prevented her
from understanding the procedure necessary to appeal the denial
of her prior pro se claim, Secretary could not decline to
reconsider claim "unless he first conducted an evidentiary
hearing"); Dealy v. Heckler, 616 F.Supp. at 887 (finding notice
given to plaintiff to be constitutionally deficient and ordering
that Secretary "afford the plaintiff a full, fair and complete
administrative hearing on the plaintiff's second application
without regard to the decision made with respect to the first
application").  Such is the case here.  Plaintiff, on behalf of
Claimant, has already received a supplemental hearing on her
claim that the 1975 notice and the 1978 notice were deficient and
violated Claimant's right to due process and that, therefore, the
prior applications should be reopened.  The Appeals Council
remanded specifically for an adjudication of Claimant's alleged
disability prior to April 1, 1975.  (R. at 41)  At the
supplemental hearing, Plaintiff's attorney took the opportunity
"to pursue a whole new issue ...," (R. at 261), namely whether
the prior applications should be reopened.  ALJ Atkins addressed
that issue.  No further process is due.[19]  See Kildare v. Saenz,
325 F.3d at 1085 (noting that procedural due process violation is

---

[19] At least one court has found that "[n]o constitutional
violation will have occurred if substantial evidence supports the
ALJ's decision at the 91-5p hearing."  Evans v. Chater, 110 F.3d 1480,
1483 (9th Cir. 1997).  Here, the Court has found that substantial
evidence supports the ALJ's decision that Plaintiff has not shown
good cause for Claimant's failure to meet the deadline for requesting
reconsideration of the initial denials of his prior applications.  See
Discussion section I. supra at 18-19.

not complete "unless and until the State fails to provide due
process").

The Court finds that no due process violation occurred.
Accordingly, the Court does not recommend remand on Plaintiff's
procedural due process claim.

## III.  SSR 95-1p - Defective notice(s)

Plaintiff additionally contends that ALJ Atkins' refusal to
reopen the September 4, 1975, and July 11, 1978, initial
determinations violated Plaintiff's procedural due process right
to notice of the consequences of not seeking further
administrative review of an initial denial.  <u>See</u> Plaintiff's Mem.
at 15 (citing SSR 95-1p, 1995 WL 259487 (S.S.A.)).  According to
Plaintiff, because the notices of the denials were defective,
Claimant had good cause for not timely seeking reconsideration of
those denials and is entitled to DIB based on either or both of
his prior applications.  <u>See</u> <u>id.</u> at 17.

SSR 95-1p provides in relevant part that:

A notice is covered by this Ruling if it advised the
claimant that if he or she did not request administrative
review, he or she still had the right to file a new
application at any time without further explaining that
filing a new application instead of a request for
administrative review could result in the loss of
benefits.
1.   <u>Initial</u> <u>Determination</u> <u>Notice</u> <u>Containing</u> <u>The</u>
<u>Following</u> <u>Sentence:</u>
**"If you did not request reconsideration of your
case within the prescribed time period, you still
have the right to file another application at any
time."**

....

Absent evidence to the contrary, SSA will presume that
any notice of an initial or reconsideration determination
denying a claim for [DIB] is covered by this Ruling if it
was dated after August 31, 1977, and prior to March 1,
1990.
In all other situations (e.g., notices ... dated prior to

> September 1, 1977, ... ) the claimant must furnish a copy
> of the notice covered by this Ruling, or SSA's records
> must show that a notice covered by this Ruling was issued
> to the claimant.

SSR 95-1p, 1995 WL 259487, at *2-3.  The Ruling additionally
states that:

> Under this Ruling, the Agency will find that a claimant
> has demonstrated that the failure to file a timely
> request for administrative review was the result of a
> notice covered by this Ruling if he or she provides an
> acceptable explanation, based on all the pertinent facts
> in a particular case, **linking his or her failure to file
> a timely request for administrative review to the absence
> in the notice of a statement that filing a new
> application instead of a request for administrative
> review could result in the loss of benefits.**
> In making this determination, factors which an
> adjudicator may consider include, but are not limited to,
> the following:
>> —the claimant's explanation of what he or she
>> thought the notice meant and how that understanding
>> influenced his or her actions;
>> —**the claimant's mental condition;**
>> —the claimant's educational level;
>> —the claimant's ability to speak and understand the
>> English language;
>> —how much time elapsed before the claimant filed a
>> subsequent claim or sought administrative review of
>> the prior determination; and
>> —whether the claimant was represented by a non-
>> attorney.  Normally, representation by an attorney
>> at the time of receipt of the notice bars a
>> claimant from relief under this Ruling.

Id. at *3-4 (bold added); see also id. at *2 ("SSA will make a
finding of good cause for late filing of a request for
administrative review ... if a claimant received a notice covered
by this Ruling and **demonstrates that, as a result of the notice,
he or she did not timely request such review.  The mere receipt
of a notice covered by this Ruling will not, by itself, establish
good cause.**")(bold added).

ALJ Atkins found that "SSR 95-1p is not applicable in the instant case since ... the claimant's widow asserts that he did not file a timely request for review due to his psychosis (as opposed to being misled by a defective notice) and the only initial determination notice dated September 4, 1975[,] which is contained in the record is dated before the period identified for these defective notices."  (R. at 23 n.10)  The 9/4/75 notice, which Claimant received before the relevant time period, does not contain the required sentence.[20]  (R. at 52)  The 7/11/78 notice, which falls within the relevant period, is not in the record, although it is presumptively covered by SSR 95-1p.  See SSR 95-1p, 1995 WL 259487, at *3.

ALJ Atkins' reason for finding SSR 95-1p inapplicable, however, is valid.  At the 3/30/06 hearing, Plaintiff's attorney questioned Plaintiff as follows:

> Q    In your opinion, was your husband incapable, **due to his mental illness**, of really understanding and appreciating the Social Security application --

---

[20] As noted previously, see Facts and Travel supra at 2 n.2, the 9/4/75 notice of denial at the initial determination stage was erroneous in that Plaintiff did, in fact, have insured status at that time.  However, as ALJ Atkins observed:

> [T]here is no evidence of record which shows that either of the initial determinations on the prior applications for [DIB] were erroneous on the face of the evidence considered therein "**at that time**" since, ... particularly with respect to the initial determination dated September 4, 1975[,] which erroneously denied the claim for lack of insured status, the [SSA] would not have had the claimant's earnings for the years 1975 and 1976 "**at that time**," which subsequently gave him insured status, due to the lag time involved in posting the claimant's earnings (20 CFR [§] 404.988(c)(8).

(R. at 22); see also Adames v. Califano, 552 F.2d 1, 2 (1st Cir. 1977)(affirming ALJ's decision that reopening a prior decision to correct a concededly erroneous omission of a critical quarter of coverage was barred); 20 C.F.R. § 404.988(c)(7), (8).

```
A    Oh.

Q    -- process, the denials, the importance of the
     denials, the need to appeal?  Could he comprehend
     any of that, in your opinion?

A    No.  My husband didn't even go for Workers' Comp
     when he left work.  He could have done that.  He
     had no idea what he was doing.
```

(R. at 272)(bold added).  Counsel did not question Plaintiff regarding the allegedly defective notices.  In fact, in her closing argument, Plaintiff's attorney characterized the issue of the notices as "just frosting on the cake."  (R. at 279)

Moreover, Plaintiff has offered no evidence "linking [Claimant's] failure to file a timely request for administrative review to the absence in the notice of a statement that filing a new application instead of a request for administrative review could result in the loss of benefits."  SSR 95-1p, 1995 WL 259487, at *3.  On the contrary, as ALJ Atkins noted, (R. at 23 n.10), Plaintiff testified that Claimant's failure to comprehend the need to appeal the initial determination was due to his mental illness, (R. at 272).

Accordingly, the Court concludes that Plaintiff's SSR 95-1p argument is without merit.  I therefore do not recommend remand on this issue.

## Summary

In summary, the Court finds: that ALJ Atkins' determination that Plaintiff had not shown "good cause" for failing to timely request reconsideration is supported by substantial evidence in the record and is legally correct; that ALJ Atkins' refusal to reopen Claimant's prior applications did not violate his right to due process; and that ALJ Atkins' conclusion that SSR 95-1p was inapplicable is supported by substantial evidence and is legally correct.  The Court further finds that ALJ Atkins' decision that

Claimant was not disabled at any time prior to April 1, 1975, is supported by substantial evidence in the record and is legally correct.  Accordingly, Plaintiff's claims of error should be rejected.

### Conclusion

Based on the foregoing, I recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Reverse be denied.  Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


<u>/s/ David L. Martin</u>
DAVID L. MARTIN
United States Magistrate Judge
September 25, 2009